IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMAS W. SAMMONS,

        Petitioner,

   v.                                Civ. Act. No. 17-1796-LPS

ROBERT MAY, Warden, and
ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

        Respondents.[1]

---

**MEMORANDUM OPINION**

Thomas W. Sammons. *Pro se* Petitioner.

Sean Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

April 9, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Thomas W. Sammons ("Petitioner"). (D.I. 2) The State filed an Answer in Opposition. (D.I. 12) For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

As summarized by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading up to his arrest and conviction are as follows:

> In August, 2006, Deborah Knepp ("Knepp") awoke to find an intruder in her bedroom attempting to steal her large television. Knepp confronted the intruder, who walked her downstairs into the living room. Knepp and the intruder talked for roughly thirty minutes. The intruder said he was seeking payment for the debts of Christina Adams, who he thought was Knepp's daughter. However, Knepp does not have a daughter named Christina Adams.
>
> When this mistake became clear, the intruder fled. During the entire conversation, Knepp had a clear view of the intruder's face, as he was not wearing a mask. Knepp later identified [Petitioner] from a photo array as the intruder.
>
> [Petitioner] was charged with Burglary in the Second Degree, Robbery in the Second Degree, and Criminal Mischief. After a jury trial, he was convicted of these three charges. The trial judge ordered a Pre-Sentence Investigation. After the Pre-Sentence Investigation Report was completed, the trial judge granted the State's motion to declare [Petitioner] an habitual offender. [Petitioner] was sentenced to life in prison.

*Sammons v. State*, 68 A.3d 192, 194 (Del. 2013). On March 14, 2013, the Delaware Supreme Court affirmed Petitioner's conviction and sentence. *Id.* at 196.

On February 3, 2014, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").

(D.I. 10-1 at 4; D.I. 10-12) The Superior Court appointed counsel to represent Petitioner in the Rule 61 proceeding, who filed an amended Rule 61 motion. (D.I. 10-1 at 7; D.I. 10-8 at 184-247) On October 13, 2016, a Superior Court Commissioner recommended that Petitioner's amended Rule 61 motion be denied. (D.I. 10-1 at 11; D.I. 10-7 at 61-76) On November 21, 2016, the Superior Court adopted the Commissioner's Report and Recommendation and denied Petitioner's amended Rule 61 motion. (D.I. 10-1 at 11; D.I. 12 at 2; *see also State v. Sammons*, 2016 WL 6972100 (Del. Super. Ct. Nov. 21, 2016)) The Delaware Supreme Court affirmed that decision on August 16, 2017. *See Sammons v. State*, 170 A.3d 148 (Table), 2017 WL 3527493 (Del. Aug. 16, 2017).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete

2

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

3

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98

4

(2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

The Petition asserts the following four grounds for relief: (1) defense counsel provided ineffective assistance by: (a) failing to properly advise Petitioner about the possible adverse sentencing consequences of rejecting the State's plea offer; (b) failing to limit evidence of Petitioner's prior bad acts and failing to request a limiting instruction; and (c) failing to move to suppress Petitioner's identifications; (2) prosecutorial misconduct; (3) a cumulative due process violation; and (4) the trial court erred by not conducting a hearing on Petitioner's Rule 61 motion.

### A. Claim One: Ineffective Assistance of Counsel

In Claim One, Petitioner asserts three instances of alleged ineffective assistance of counsel. The Superior Court denied all three arguments as meritless, and the Delaware Supreme Court affirmed that decision "on the basis of and for the reasons stated in" the Commissioner's Report and Recommendation that was adopted by the Superior Court. Therefore, Claim One will not

5

warrant relief unless the Superior Court's[2] decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

---

[2]*See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (federal habeas law employs "look through" presumption that assumes later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment). In this case, the Court will "look through" the Delaware Supreme Court's summary affirmance to the Superior Court's decision.

6

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Superior Court decision was not contrary to *Strickland* because it correctly identified the *Strickland* standard applicable to Claim Two. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[3] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but

---

[3]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

7

for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Claim One (a): Failure to give proper advice about rejecting plea

Prior to trial, the trial court asked the parties about the status of plea discussions. (D.I. 10-8 at 39) The parties confirmed there were discussions, but that Petitioner was not interested in accepting a plea. (*Id.*) The proposed plea offer was for Petitioner to plead guilty to: one count of second degree burglary, with the State asking for the mandatory minimum penalty of one year; one count of first degree robbery, with the State asking for eighteen months at Level V; and one count of criminal mischief, with probation at Level III and TASC monitoring. (D.I. 10-8 at 39-40) The trial court then conducted a colloquy with Petitioner concerning his position on a plea. (*Id.* at 41) The trial court informed Petitioner that, if convicted at trial, he faced a possible sentence of forty-one years, and reiterated that the plea offer would be for "[t]wo and a half years, plus probation." (D.I. 10-8 at 41) The trial court then stated, "So you understand that if you go to trial you are risking over 35 years of imprisonment?" (*Id.*) Petitioner replied, "I am not guilty, Your Honor." (*Id.*) The trial court reiterated a few more times the difference between the sentence that would be imposed under the plea offer and the possible sentence Petitioner faced if convicted at trial, verifying that Petitioner understood what he was doing. (*Id.*) Petitioner stated that he did understand what he was doing and that the he was satisfied with the discussions he had had with his trial counsel. (*Id.*)

In this proceeding, Petitioner contends that defense counsel failed to properly advise him concerning his decision to reject the State's plea offer. Based on the assertions in his amended Rule

8

61 motion, Petitioner argues that defense counsel provided ineffective assistance because she failed to advise him that he was habitual eligible (due to his Florida convictions) if convicted at trial and would be facing mandatory life imprisonment. (*See* D.I. 10-8 at 214) The Superior Court denied the claim based on this argument after reviewing defense counsel's original and supplemental Rule 61 affidavits detailing her communications with Petitioner. In those affidavits, defense counsel explained that the State was not aware of Petitioner's potential habitual offender status at the time of Petitioner's plea discussions and, therefore, the State did not discuss the possibility of habitual sentencing with defense counsel prior to the trial court's rejection-of-plea colloquy or prior to trial. (D.I. 10-8 at 248-49) Defense counsel also stated that she spoke with Petitioner about the State's lack of knowledge of his out-of-state convictions and urged him to reconsider his decision to go to trial. (*Id.* at 248-49, 282) In addition, defense counsel explained that she discussed the possibility of Petitioner being sentenced as a habitual offender on numerous occasions before trial and that his Florida offenses would "likely make [Petitioner] a habitual offender under subsection (b) of the Delaware habitual statute." (D.I. 10-8 at 282) Defense counsel stated that she and a psycho-forensic evaluator spent time with Petitioner to ensure he understood the plea offer and possible consequences of rejecting it. (*Id.*) Defense counsel even arranged for Petitioner's step-mother and AA sponsor "to speak with him privately in an effort to have [Petitioner] reconsider his position." (Id.) The Superior Court concluded that Petitioner failed to demonstrate defense counsel's actions fell below the *Strickland* standard, stating "[h]ad trial counsel alerted the State to [Petitioner's] habitual status, then she would have certainly put him at risk for a life sentence upon conviction, which would have been a risky move." (D.I. 10-7 at 70)

The Superior Court also determined that Petitioner failed to demonstrate that he was prejudiced by defense counsel's performance. In his Rule 61 motion, Petitioner asserted that he

9

would have entered the plea if he had known about his possible habitual offender status. The Superior Court, however, concluded that the record belied his "disingenuous" contention. (D.I. 10-7 at 71) Referring to the transcript of the rejection-of-plea colloquy with Petitioner that occurred prior to trial, the Superior Court noted that Petitioner had been adamant that he would not accept a plea to anything but probation because he was "not guilty of the crime." (*Id.* at 39, 41) In finding that Petitioner was not prejudiced, the Superior Court also stated that Petitioner's post-trial assertion that he "was not properly advised which resulted in" him rejecting the plea offer "is the type of theoretical possibility warned against in *Strickland*." (D.I. 10-7 at 71)

In this proceeding, Petitioner has not provided anything to contradict defense counsel's assertions in her Rule 61 affidavits, nor has he demonstrated a reasonable probability that he would have accepted a plea offer but for defense counsel's advice during the pre-trial process. After reviewing Petitioner's contentions in context of the full record, the Court concludes that the Superior Court reasonably applied *Strickland* in denying Claim One (a).

### 2. Claim One(b): Failure to limit the admission of evidence of prior bad acts

Next, Petitioner asserts that defense counsel provided ineffective assistance by failing to limit the admission of prior bad acts in relation to charges defense counsel successfully had dismissed. The following background information provides context for Petitioner's argument.

Petitioner was originally charged with two residential burglaries: the March 31, 2011 burglary of Knepp's residence and a June 26, 2011 burglary of Schwartz's residence. Both cases proceeded to trial. Knepp confronted the burglar in her bedroom and, at trial, identified Petitioner as the person who broke into her home and robbed her. Schwartz did not see who broke into her home. (D.I 12 at 8-9)

10

At the conclusion of the State's case, defense counsel moved to dismiss the charges related to the Schwartz burglary, arguing that there was no evidence that Petitioner was the person who burglarized Schwartz's home. (D.I. 10-8 at 146) The trial court granted Petitioner's motion for judgment of acquittal for the Schwartz burglary, and references to the Schwarz burglary were removed from the jury instructions.

In his Rule 61 motion, Petitioner argued that defense counsel was ineffective for failing to request a jury instruction to limit the jury's consideration of Petitioner's prior acts in relation to the charges on which he had been acquitted. The Superior Court rejected Petitioner's argument, opining

> The crux of [Petitioner's] argument lies with evidence of his bad acts having been considered impermissibly by the jury. In support of his argument, he relies entirely on *Getz v. State* [538 A.2d 726 (Del. 1988)] and its progeny. However, *Getz* addresses **uncharged** misconduct. Here, [Petitioner] was charged with misconduct, which the Court dismissed for lack of evidence at the end of the State's case.
>
> [Petitioner] complains that jury instruction to disregard the testimony regarding the dismissed charges was not given. The jury instructions given rest in the discretion of the trial judge. Here, [Petitioner] cloaks his complaint against the judge as one against trial counsel.

(D.I. 10-7 at 71-72) (emphasis in original) In her Rule 61 affidavit, defense counsel explained that she did not request a limiting instruction concerning the Schwartz case because nothing about the Schwartz case went to the jury for its consideration. (D.I. 10-8 at 282)

Petitioner's argument in this proceeding concerning defense counsel's failure to request a limiting instruction regarding the dismissed Schwartz case cannot satisfy either prong of *Strickland*. As the Superior Court explained when denying this claim, Petitioner fails to recognize the difference between charged and uncharged conduct. (D.I. 10-7 at 71-72) The protections surrounding "prior bad act" evidence apply to uncharged conduct and not, as involved here, charged conduct. (D.I. 10-

7 at 71-72; *see also, e.g., Watson v. State*, 2015 WL 1279958, at *1 (Del. Mar. 19, 2013) (referring to "evidence of uncharged 'other crimes wrongs or acts'"); *United States v. Green*, 617 F.3d 233, 245-50 (3d Cir. 2010). Petitioner was indicted for the Schwartz burglary and evidence of that crime, even if ultimately determined to be insufficient for submission for the jury's consideration, was not excludable under Delaware Rule of Evidence 404(b). In turn, there was no need for defense counsel to request a limiting instruction on a subject the jury was no longer going to consider. In fact, it was possible that calling further attention to a crime that Petitioner had successfully dismissed would have been more prejudicial. Finally, the Superior Court addressed the testimony that had been admitted in relation to Schwartz burglary and found that it "was so unhelpful to the State that it suffered a judgment of acquittal" and, therefore, was not prejudicial to Petitioner. (D.I. 10-7 at 72) Given these circumstances, the Court concludes that the Superior Court reasonably applied *Strickland* in denying Claim One(b).

### 3. Claim One(c): Failed to move to suppress identification evidence

Prior to Petitioner's arrest, the victim Knepp was shown two photo arrays, each consisting of six photos. The first photo array did not contain a photo of Petitioner. While Knepp identified an individual in the first photo array as having facial characteristics similar to the person who stole her television, she did not make a positive identification of any individual. The second photo array contained a photo of Petitioner, and Knepp immediately and definitively identified Petitioner as the suspect. Defense counsel unsuccessfully moved to suppress the second photo array, and Petitioner contends counsel should have moved to suppress it on other grounds. (D.I. 10-8 at 22, 69-70, 228)

In Claim One(c), Petitioner contends that defense counsel was ineffective for failing to move to suppress Knepp's identification of Petitioner from a photo array for being suggestive. Petitioner

also contends that defense counsel should have moved to suppress Knepp's in-court identification of Petitioner as the man who broke into her home and robbed her. (D.I. 10-8 at 228)

The Superior Court denied the instant allegations for three primary reasons: (1) the second photo array used to identify Petitioner was not unnecessarily suggestive; (2) Petitioner would not have prevailed on a motion to suppress the second photo array as unnecessarily suggestive; and (3) defense counsel effectively "use[d] several witnesses in the State's case to attack the veracity of the identification procedure." (D.I. 10-7 at 74) The record supports these conclusions. Defense counsel spent a majority of time during cross-examination detailing the use of the first photo array and Knepp's "incorrect" initial identification (*i.e.*, Knepp's identification of someone who had facial characteristics similar to Petitioner). (D.I. 10-8 at 80-84) Defense counsel also made closing arguments concerning the discrepancies between the two arrays. (D.I. 10-8 at 159-62) Given this record, the Court concludes the Superior Court reasonably applied *Strickland* in concluding that Petitioner's "claim does not withstand the first prong of *Strickland*." (D.I. 10-7 at 74)

Petitioner also cannot demonstrate that he suffered prejudice under the *Strickland* standard, because it is highly unlikely that he would have prevailed on a motion to suppress the second photo array on suggestiveness grounds. Knepp had spent ample time with Petitioner during the burglary, and he was not wearing a mask or a disguise. She was able to describe the suspect in detail and identified Petitioner from the array without hesitation. Knepp also identified Petitioner in court with certainty. Given these circumstances, the Court concludes that the Superior Court reasonably applied *Strickland* in finding that Petitioner was not prejudiced by defense counsel's actions regarding the identifications.

13

### B. Claim Two: Prosecutorial Misconduct

In Claim Two, Petitioner alleges his right to a fair trial was violated when a Deputy Attorney General engaged in misconduct during his trial. (D.I. 2 at 10) More specifically, he contends that "a Deputy Attorney General who was in the courtroom at large, not participating in the prosecution of [Petitioner], is blameworthy of prosecutorial misconduct due to some nondescript hand gestures." (D.I. 10-7 at 75) The Superior Court denied Claim Two as procedurally defaulted under Rule 61(i)(3), because Petitioner did not raise the issue during trial or on direct appeal, and he failed to demonstrate cause or prejudice to excuse that default. (D.I. 10-7 at 66-67, 75)

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984), that its decision rested on state law grounds. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule effectuating a procedural default. *See, e.g., Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998). Therefore, the Court cannot review the merits of Claim Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner does not assert any cause for his default. In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Two as procedurally barred from habeas review.

### C. Claim Three: Cumulative Due Process Violation

In Claim Three, Petitioner asserts that the cumulative effect of each alleged error deprived him of a fair trial and is therefore sufficiently prejudicial to warrant relief. (D.I. 2 at 13) Petitioner

14

presented the same "cumulative error" argument to the Delaware state courts in his Rule 61 proceeding, and the Superior Court denied the argument as meritless. Therefore, Claim Three will only warrant habeas relief if the Superior Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

It appears that the United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). Since there is no clearly established Federal law with respect to a cumulative error argument, arguably the Court's § 2254(d) analysis is over and Petitioner is not entitled to habeas relief for Claim Three.

However, the Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014). Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Accordingly, the Court will review Claim Three.

Here, the Superior Court reviewed and rejected each alleged underlying error on its merits, and also rejected Petitioner's cumulative error argument, stating "I do not find any of [Petitioner's] claims individually to have merit therefore I cannot conclude that an accumulation of meritless claims rises to a constitutional violation." (D.I. 10-7 at 77) As previously discussed, this Court has also concluded that Claims One and Two lack merit and did not cause any prejudice. Since

15

Petitioner has not provided anything to demonstrate "actual prejudice" even when the two Claims are considered together, the Court will deny Claim Three as meritless.

### D. Claim Four: Failure to Conduct Post-Conviction Hearing

In his final Claim, Petitioner contends that the Superior Court erred by denying his request for an evidentiary hearing in his Rule 61 proceeding. This Claim alleges a state law error that is not cognizable on federal habeas review, because Petitioner's ultimate criticism is with the Superior Court's analysis in a state collateral proceeding. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[The] federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding.") (emphasis in original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Accordingly, the Court will deny Claim Four for failing to assert a proper basis for federal habeas relief.

### V.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

16

## VI. CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.